IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

RITA K. BATES, )
)
Plaintiff, )
)
v. ) Case No. CIV-08-015-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Rita K. Bates (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 26, 1961 and was 45 years old at the time of the latest decision by the ALJ. Claimant completed her education through the twelfth grade. Claimant has worked in the past as an insurance claims payment clerk, newspaper advertisement clerk, retail cashier/bookkeeper/manager, and a secretary for a freight company. Claimant alleges an inability to work beginning October 20, 1994 due to carpal tunnel syndrome.

### Procedural History

On May 25, 1995, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 22, 1996, a hearing was held before ALJ Bruce Evans. By decision dated July 17, 1997, the ALJ found that Claimant was disabled during a closed period from October 20, 1994 through August 29, 1996. On September 17, 1999, the Appeals Council remanded the case for further consideration.

On January 26, 2000, a supplemental administrative hearing was conducted before ALJ Evans. By decision dated April 12, 2002, the ALJ again awarded benefits for the same closed period. On August 16, 2002, the Appeals Council again remanded the case.

On remand, an additional hearing was conducted on November 19, 2002 before ALJ Dean C. Metry. On April 21, 2003, the ALJ issued an unfavorable opinion. The opinion was unclear as to whether benefits were awarded for a closed period. As a result, the Appeals Council notified Claimant the case would be reopened on April 6, 2005. However, that decision was vacated and the case was again remanded on January 11, 2006.

On August 23, 2006, a third supplemental hearing was conducted before ALJ Michael Kirkpatrick. On January 24, 2007, the ALJ issued an unfavorable decision. On November 17, 2007, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of

further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform light work that does not require constant manipulation.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to consider all of Claimant's impairments in his RFC assessment; and (2) failing to afford Claimant's treating physician's opinions controlling weight.

**RFC Assessment**

Claimant asserts the ALJ failed to consider all of Claimant's impairments in reaching the RFC he attributed to her. On October 11, 1994, Claimant was attended by Dr. David W. Osterman. Claimant was referred to Dr. Osterman with symptoms indicating bilaeral carpal tunnel syndrome. On October 31, 1994, Claimant underwent a carpel tunnel release procedure on her right wrist. On December 12, 1994, Claimant underwent the same procedure on her left wrist. (Tr. 115). Claimant still experienced weakness in her upper extremities.

On January 12, 1995, Claimant began occupational therapy with Ms. Tammy Seitz. (Tr. 84). Ms. Seitz provided therapy to Claimant

between January and June of 1995 (Tr. 90-112), finding Claimant was having trouble with her right arm and that her physician was considering nerve blocks. (Tr. 106-107, 139).

On April 10, 1995, Claimant received a nerve block from Dr. E. Allen. (Tr. 196-199). Ms. Seitz found Claimant shifted posture during tasks that caused pain, which might be contributing to Claimant's back and neck problems. (Tr. 106). After the nerve block, Ms. Seitz found Claimant was not able to oppose her thumb to all digits. (Tr. 105). Ms. Seitz was also concerned about Claimant's pain level and passed her concerns on to Dr. Osterman. (Tr. 104-105).

On May 5, 1995, Claimant received another nerve block, which affected her vocal chords. (Tr. 103). Claimant developed a trigger thumb which was treated with an injection. (Tr. 116, 121).

On June 28, 1995, Claimant saw Dr. Osterman, who noted she was having continued weakness in her hands. Dr. Osterman recommended continued physical therapy. He suggested Claimant could not return to work that required typing or repetitive use of the upper extremities. (Tr. 116-117, 120).

On July 14, 1995, Dr. Osterman found Claimant had quite a bit of limitation of motion of the fingers and weakness in the hands, recommending she continue with therapy. (Tr. 120).

On September 13, 1995, Ms. Seitz found Claimant experienced diminished strength in her upper extremities, was unable to make a

6

fist, and had difficulties with daily tasks. She noted Claimant had difficulty with range of motion, strength, sensation and hand use. (Tr. 84).

On November 2, 1995, an occupational therapist, Ms. Diane Miller, concluded Claimant had decreased functional independence as a result of her condition. She related specific, routine daily tasks that Claimant could no longer perform. (Tr. 178-179).

On November 3, 1995, Claimant was seen by Dr. John G. Papaila to evaluate the functional loss of her hands. He found Claimant could not make a fist and had a tremor when she tried. Dr. Papaila could find no physical reason for the degree of loss and suggested a psychological evaluation. (Tr. 113-114).

On November 27, 1995, Claimant was referred to Dr. David J. Zehr, a hand surgeon. Dr. Zehr diagnosed bilateral carpal tunnel syndrome and myofascial dysfunction of the shoulder and pronator syndrome. He questioned Claimant's effort to make a fist and whether further surgery would help. He recommended a psychological evaluation and treatment for her shoulder. (Tr. 212-217).

On January 29, 1996, Claimant underwent a Functional Capacity Evaluation. The evaluation concluded Claimant had significant functional limitations in the use of her upper extremities as a result of her range of motion and strength deficits. Keyboarding tasks were extremely limited. (Tr. 175-177).

On February 16, 1996, Claimant underwent an EMG by Dr. R. Frank

Morrison. This test revealed Claimant had recurrent carpal tunnel syndrome, chronic and moderate to severe in nature. Claimant also suffered from pronator syndrome bilaterally that was chronic and moderately severe. Claimant's condition had worsened over the prior six months and her pain increased with resisted, sustained, or repetitive flexion of the wrist. (Tr. 146-154).

Also on February 16, 1996, Claimant began seeing Dr. Kyle Babick, a clinical psychologist. He concluded Claimant suffered from Major Depression that was moderate to severe, with a GAF of 55. Dr. Babick found Claimant's mental condition was aggravated by her physical problems. (Tr. 165-174).

On May 13, 1996, Claimant was seen by Dr. Zehr who noted she had received trigger point injections from Dr. Maxwell. He also acknowledged Claimant's treatment by Dr. Babick. Dr. Zehr opined Claimant would never return to repetitive use of her hands. (Tr. 207-209).

Claimant was attended by Dr. Babick between February of 1996 and September of 1999. He found Claimant had significant limitations in the use of her hands. (Tr. 157-161).

On September 8, 1999, Dr. Babick considered Claimant's depression to be in partial remission with a GAF of 70. He noted Claimant could not return to her job with her physical restrictions. (Tr. 314-315).

On January 20, 2000, Dr. Zehr completed a Medical Assessment of

8

Ability to Do Work-Related Activities (Physical) form on Claimant. He determined Claimant was restricted to ergonomic positions, could lift under 5 pounds occasionally, and could not engage in any repetitive movements with her hands. He also makes the statement that Claimant "does have problems in other areas that will limit her from certain tasks." (Tr. 329).

The period for consideration is limited to the time between 1994 and 2001. This Court agrees with Claimant that only her work as an insurance claims clerk performed during this period constitutes past relevant work. Any work outside and after this closed period is not relevant. As a result, the ALJ's consideration of later work performed by Claimant outside of the relevant period including telemarketer and medical office receptionist constitutes error.

Claimant first challenges the failure to obtain medical records from Dr. Maxwell concerning Claimant's treatment for shoulder problems. Indeed, the Appeals Council previously recognized Claimant had undergone surgery for her shoulder problems and been treated by Dr. Maxwell. However, the Appeals Council also acknowledged Dr. Maxwell's records were not contained in the medical record. It directed that the records be obtained by the ALJ in order to ascertain the extent of Claimant's shoulder and neck impairments. (Tr. 246-249). There is no indication in the record that the records were ever obtained by the three ALJ's who have laid

hands upon this file. Without these records or further evaluation for Claimant's shoulder and neck problems during the relevant period, a proper determination of Claimant's impairments cannot occur. The ALJ has a duty to consider all of a claimant's impairments and to develop the record to insure that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The need for Dr. Maxwell's records were apparent to the Appeals Council and should have been apparent to the latest ALJ. The case must be remanded for the purpose of obtaining all treatment records during the relevant period and for reassessment of the totality of Claimant's impairments.

### Treating Physician's Opinion

Claimant next contends the ALJ gave reduced or no weight to the opinions of Dr. Osterman, Ms. Seitz, Ms. Miller, Dr. Papaila, Dr. Morrison, and Dr. Zehr, all of whom in one form on another

determined Claimant could not return to jobs involving repetitive use of both hands. Certainly, the ALJ had to go to significant lengths to reject the findings of each of these treating sources, some of which are entitled to controlling weight and some, such as Ms. Seitz and Ms. Miller, are sources which are to be considered but are not entitled to controlling weight. The ALJ failed to consider the opinion of Dr. Morrison altogether, concluding in error that his report was not a part of the medical record.

It is well-established that any time an ALJ rejects the opinion of a treating physician or fails to give it controlling weight, he must provide substantiation for that rejection. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the

11

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

With regard to the opinion of Dr. Osterman, the ALJ gave them controlling weight when they supported a finding of non-disability but ignored the findings which precluded a return to repetitive use employment. Dr. Papaila is only briefly mentioned in the decision. As stated previously, Dr. Morrison's opinions were given no consideration. The ALJ rejects the opinions of Dr. Zehr, concluding they are not supported by the medical records. However, as

12

indicated, the ALJ did not have all of the medical records to determine whether support actually existed. On remand, the ALJ shall re-evaluate all of the opinions of the medical providers, including Dr. Morrison who was not previously considered. The ALJ shall provide detail as to the level of weight afforded each providers opinions and limit his analysis to the relevant time period.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 19th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

13